Patrick M. Flatley
United States Bankruptcy Judge

Dated: Thursday, January 28, 2016 4:11:04 PM

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SUMMIT III, LLC, | ) | Case No. 2.11-bk-01448 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| —————————————— | ) | |
| | ) | |
| THOMAS H. FLUHARTY, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 2:13-ap-00045 |
| | ) | |
| CRAIG M. DUET, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————— | ) | |

## **MEMORANDUM OPINION**

Craig Duet (the "Defendant") seeks summary judgment regarding the fraudulent and preferential transfer claims asserted against him by Thomas H. Fluharty, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Summit III, LLC (the "Debtor"). He asserts that summary judgment is appropriate because the payments he received from the Debtor do not qualify as fraudulent or preferential transfers under §§ 544, 547, or 548 of the Bankruptcy Code. The Trustee asserts that summary judgment is not appropriate as there are disputes of material facts relevant to all of his claims against the Defendant.

For the reasons stated herein, the court will deny in part and grant in part summary judgment.

1

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Showing an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317.

## II.   BACKGROUND

The Defendant, Anthony Skatell, and Thomas Tretheway sought to develop a resort community in West Virginia called Sawmill Village. To facilitate this process, the parties formed and operated the Debtor, Mountaintop, LLC, and Mountaintop Development, LLC. Mr. Skatell held 50% of the membership interest, and Mr. Tretheway and the Defendant each held 25% stakes

in all three entities. The three men formed the Debtor on August 3, 2005. They did not execute a written operating agreement pertaining to the Debtor. There was, however, an operating agreement for Mountaintop, and the record indicates that the partners operated the Debtor in accordance with the Mountaintop operating agreement.[1]

In December 2006, Mr. Skatell and Mr. Tretheway issued a capital call for Mountaintop in the amount of $900,000. Pursuant thereto, Mr. Skatell was obligated to contribute $450,000 of capital to Mountaintop, and the Defendant and Mr. Tretheway were to contribute $225,000 each. The Defendant informed the other members he was unable to fulfill his capital call obligation of $225,000. As a result, Mr. Tretheway and Mr. Skatell stated they would not pursue the obligation but that they and the Defendant should go separate ways. The Defendant responded by letter in March 2007 withdrawing from Mountaintop. As a result of the Defendant's withdrawal, Mr. Skatell also failed to make his capital contribution.

Following the March 2007 letter, the Debtor had its tax returns and other financial documents prepared to indicate that the Defendant was no longer a member of the Debtor.[2] On August 9, 2007, the Defendant filed a civil action against Mountaintop, Mr. Tretheway, Mr. Skatell, and the Debtor alleging that he was due a monetary redemption of his respective membership interests in the Debtor and Mountaintop following his dissociation. On June 19, 2008, Mr. Tretheway sold his interests in the Debtor, Mountaintop, and Mountaintop Development to Mr. Skatell. The Debtor again amended its tax documents and financial records to indicate this change. As of that time, Mr. Skatell claimed sole ownership of all three entities and continues to do so. To date, Mr. Skatell has not made his $450,000 capital contribution to Mountaintop.

The Defendant and the parties he named in his complaint resolved the litigation by executing a March 27, 2009 Settlement Agreement whereby the Debtor executed a promissory note to the Defendant for $754,750, plus interest. Mr. Skatell personally guaranteed payment of $525,000 under the Settlement Agreement; however, Mr. Skatell, Mountaintop, and Mr.

---

[1] Other than the bald assertion by Mr. Skatell that the operation of the Debtor occurred in conjunction with Mountaintop's operating agreement, the record is barren regarding the details as to how governance in that regard was accomplished.

[2] The record fails to identify a precise point at which the Defendant withdrew from the Debtor; rather, it merely indicates that the Defendant responded to Tretheway's offer to go separate ways by withdrawing from Mountaintop. Nonetheless, the Debtor's own records indicate that the Defendant ceased to be a member shortly after his withdrawal from Mountaintop.

Tretheway did not undertake any additional obligations thereunder. Consistent with the Settlement Agreement, the Defendant dismissed the lawsuit and released all of the defendants from "any and all actions . . . that he has had or has against any of the Mountaintop Parties . . . in any manner related to the Sawmill Village development . . . ."

On March 9, 2009, the Debtor made the first scheduled payment of $30,000 to the Defendant. Thereafter, Mr. Skatell made the next six payments of $12,000 each from his personal checking account. After neither the Debtor nor Mr. Skatell made the eighth payment of $52,750 or the ninth payment of $124,000, the Debtor, the Defendant, and Mr. Skatell entered into a Forbearance Agreement on January 12, 2010. The Forbearance Agreement required "Summit or Skatell [to] make payments to [Defendant] or his assignee of the principal amount of [$40,750] plus at least the $962.12 of interest outstanding . . . on or before February 5, 2010," and payments to Duet of $12,000 each month thereafter. The Forbearance Agreement also required either Skatell or the Debtor to pay $125,000 to the Defendant by December 15, 2010. Thus, Mr. Skatell evolved from a guarantor of a significant portion of the Settlement Agreement obligation to an obligor under the terms of the Forbearance Agreement.

Mr. Skatell made all of the payments required under the Forbearance Agreement until December 15, 2010, when neither he nor the Defendant made the necessary $125,000 payment. On December 15, 2010, the Defendant declared default and accelerated the balance of the note effective January 11, 2011. Despite this, Mr. Skatell continued to make $12,000 monthly payments to the Defendant until July 15, 2011. Mr. Skatell characterized all of the payments he made to the Defendant as either loans or capital contributions to the Debtor. The Debtor's tax records for 2009 and 2010 do not show any new capital contributions, but do reflect significant increases in debt to shareholders at a time when Mr. Skatell was the only shareholder.

On August 11, 2011, the Debtor filed its Chapter 11 bankruptcy case. The Defendant filed a proof of claim asserting that the Debtor still owed him $426,741.23. On August 9, 2013, after the court converted the case to one under Chapter 7, the Trustee filed this adversary proceeding against the Defendant seeking to recover the payments made to the Defendant based upon them being preferential or fraudulent under the Bankruptcy Code and applicable state law and to disallow the Defendant's proof of claim. In total, the Trustee seeks the return of $336,193.35.

The Trustee's complaint asserts three claims for relief regarding clawbacks from the Defendant. First, the Trustee seeks to avoid fraudulent transfers made more than two years before

4

the petition date under § 544(b) and related West Virginia law.  Second, the Trustee seeks to avoid transfers within two years of the petition date under § 548.  Third, the Trustee seeks to avoid transfers made within one year of the petition date as preferential transfers under § 547.  The Trustee seeks to recover the avoidable transfers under § 550 of the Bankruptcy Code.

### III.    DISCUSSION

The Defendant moves for summary judgment based on the following four propositions: (1) that all but the first of the transfers made to him were from Mr. Skatell and not the Debtor;  (2) that, alternatively to the first ground, the transfers made to him were transfers of earmarked funds and thus not subject to avoidance as preferential or fraudulent transfers; (3) that he did not receive any transfers as an insider of the Debtor and, therefore, is not subjected to the one-year lookback period for preferential transfers; and (4) that the first transfer of $30,000 paid to him from the Debtor was not a fraudulent transfer under West Virginia law.  The Trustee argues that summary judgment is inappropriate because (1) there are disputes of material facts regarding whether the transfers were of property of the Debtor; (2) the elements of earmarking were not satisfied in these transactions; (3) there are material facts in dispute as to whether the Defendant was an insider of the Debtor; and (4) there are material facts in dispute regarding whether the transfers were made with fraudulent intent and for reasonably equivalent value.

Specifically, the Defendant alleges that only the first transfer of $30,000 was a transfer of property of the Debtor, while the remaining transfers made by Mr. Skatell were of his personal property.  The parties do not dispute that the first $30,000 was paid by the Debtor, nor do they dispute that each payment thereafter was made from Mr. Skatell's personal account.  The Defendant asserts that the Trustee must establish that the Defendant received a transfer of the Debtor's property or property in which the Debtor has an interest in order to prevail on a claim under §§ 544, 547, or 548.  The Trustee argues, however, that Mr. Skatell treated his payments to the Defendant as loans or capital contributions to the Debtor.  In support thereof, the Trustee further asserts that Mr. Skatell failed to make a required $450,000 capital contribution, and instead made the payments on the Debtor's behalf to the Defendant.

Both the Bankruptcy Code and the Uniform Fraudulent Transfers Act adopt a broad definition of the term "transfer."  In essence, "the definition of 'transfer' under the Bankruptcy Code is comprehensive and includes every conceivable mode of alienating property, whether

5

directly or indirectly, voluntarily, or involuntarily." *Matter of Criswell*, 102 F.3d 1411, 1415 (5th Cir. 1997).

Merely determining that a transfer occurred is not enough, however, to find a voidable transfer under §§ 547 or 548, or under relevant West Virginia laws, specifically W. Va. Code Ann. § 40-1A-4.  Each statute requires that the debtor's estate must be diminished by the transfer or obligation incurred.  Therefore, the Debtor must have an interest in the property transferred in order to make its transfer voidable. *See* § 544 ("the trustee . . . may avoid any transfer of property of the debtor, or any obligation incurred by the debtor . . . ."), § 547 ("the trustee may avoid any transfer of an interest of the debtor in property . . . ."), § 548 ("the trustee may avoid any transfer . . . of an interest of the debtor in property . . . ."), and W. Va. Code § 40-1A-6(d) ("A transfer is not made until the debtor has acquired rights in the asset transferred and an obligation is incurred.").  Thus, the Trustee must demonstrate that the Debtor possessed an enforceable interest in the property before the allegedly fraudulent transfer or incurrence of an obligation against the estate.

Although the Bankruptcy Code does not define 'property of the debtor,' the Supreme Court interpreted the term as "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.* 496 U.S. 53, 58 (1990). As of the petition date, property of the estate does not include property in which the debtor does not possess legal or equitable title.  11 U.S.C. § 541(a).  To the extent the debtor transfers legal or equitable title in property prepetition, the estate may avoid such transfers, and such property may become property of the estate.  11 U.S.C. § 541(a)(3).  As a debtor must have legal or equitable title in the transferred property prepetition, "the use of another entity's property to pay a creditor of the debtor's cannot be a preference." *In re Hayes Lemmerz Intern. Inc.*, 329 B.R. 136, 141 (Bankr. D. Del. 2005).  Moreover, the rationale justifying avoidance of both preferential and fraudulent transfers is the same: to ensure that the estate is not unjustly diminished so as to harm creditors. *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1180-82 (11th Cir. 1987).  Therefore, the use of another's property to pay a creditor of the debtor cannot be a fraudulent transfer.

To be clear, the Bankruptcy Code does not "sanction acts done by indirection that if performed directly would be barred by law." *5 Collier on Bankruptcy* ¶ 547.03[1][a].  A debtor may not use a proxy to repay a creditor as a workaround of the avoidance provisions.  However, potentially avoidable transfers must result in a diminution of the estate.  When payments are made

to extinguish personal liability, and the third-party payor, such as a guarantor, does not receive property or payment from the debtor in exchange for extinguishing the debt, no preferential or fraudulent transfer has occurred. *Brown v. Nat'l Bank*, 748 F.2d 490, 491 (8th Cir. 1984). Similarly, a payment made by a third party "for the specific purpose of paying at least a portion of a particular debt owed [by the debtor]" without any consideration provided by the debtor "will not create a voidable preference since there has been no diminution of the value of the estate." *Virginia Nat. Bank v. Woodson*, 329 F.2d 836 (4th Cir. 1964) (distinguishing that a transfer is not avoidable as a preference if no consideration is given, but that a transfer is avoidable to the extent of the value of shares given, when the debtor gives a third-party payor membership shares as consideration for repayment of the debtor's creditor). Thus, courts must look to whether a *quid pro quo* transaction occurs if a third party pays an antecedent debt of the debtor. If a debtor offers nothing to a third party, "there is no reason why a third-party cannot take it upon himself to pay the debts of another, and therefore help in his own way to facilitate the debtor's eventual fresh start." *Ellenberg v. First Nat'l Bank (in re Hollvey)*, 15 B.R. 850, 851 (Bankr. N.D. Ga. 1981).

In an instance where a sole member of a limited liability company ("LLC") transfers personal assets on behalf of a debtor, state law governs the analysis of its legal treatment. *In re Friedlander Capital Management Corp.*, 411 B.R. 434, 442 (S.D. Fl. 2009). In West Virginia, an LLC is a legal entity distinct from its members. W. Va. Code. § 31B-2-201. Thus, property owned by the LLC is distinct from property owned by its members. *Ashbaugh v. Corporation of Bolivar*, 481 Fed. Appx. 840, 841 (4th Cir. 2012). Members do have an obligation to contribute money, property, or other benefit to a LLC in accordance with the operating agreement, and a creditor of an LLC may enforce the original obligation of the member to contribute capital in certain circumstances. W. Va. Code § 31B-4-402. But property owned personally by members of an LLC is distinct from property owned by the LLC itself and *vice versa*. These principles apply even in a sole member LLC with the possible exception of a complete breakdown of the corporate form in which case the corporate veil might be pierced. No such evidence in this case has been presented or argued to the court.

The parties' dispute regarding the nature of the money paid to the Defendant (that is, whether it represented a loan or capital contribution by Mr. Skatell) is immaterial to the issue before the court as the Debtor never possessed legal or equitable title in the money, let alone as of the petition date. Rather, Mr. Skatell individually possessed legal and equitable title in the funds

7

at issue at all times until he transferred the property, and title thereto, to the Defendant. If the Plaintiff is correct that Mr. Skatell was obligated to contribute capital to the Debtor,[3] his property would not become property of the Debtor until Mr. Skatell transferred the property to the Debtor. Likewise, if the Plaintiff is correct that Mr. Skatell agreed to loan the money to the Debtor but instead paid it directly to the Defendant, the property transferred would not become property of the Debtor. Because Mr. Skatell never transferred money to the Debtor, the Debtor never possessed a legal or equitable interest therein, and all that became property of the estate, if anything, was the ability to force a contribution or enforce a note against Mr. Skatell.

Once again, a third party is permitted to pay down the debts of a debtor without risk of having any transfers avoided as preferential or fraudulent. Such contributions in no way harm the bankruptcy estate so long as the third party does not receive consideration from the debtor. Not only is this established law, it is necessary and sound policy as it relates to guarantors and obligors. If a bankruptcy trustee may recover funds paid by a third party obligor as a preferential or fraudulent transfer, the third party remains obligated to the creditor despite having already paid the debt only to have it absorbed into the bankruptcy estate.

In this instance, both Mr. Skatell and the Debtor owed the Plaintiff under the forbearance agreement. Mr. Skatell used funds located in his personal checking account to pay the Defendant. The funds did not pass through the Debtor. There is no indication that the Debtor gave Mr. Skatell any consideration to pay down the debt, nor would it need to as Mr. Skatell was already personally liable on the debt. Thus, the record plainly shows that the Debtor never controlled nor possessed the property transferred by Mr. Skatell. Moreover, the Debtor was not entitled to these funds such that they could have been property of the estate had they not been paid to the Plaintiff.

Therefore, none of the payments made by Mr. Skatell can be recovered by the Trustee under either §§ 544, 547, or 548. Only the first payment of $30,000 remains in dispute because it was made by the Debtor. Thus, the court will grant summary judgment to the Defendant on Counts II and III, and will partially grant summary judgment on Count I, reserving judgment only as it pertains to the first transfer of $30,000, which the parties agree came from the Debtor.[4]

---

[3] A questionable proposition since the obligation to make a capital contribution arose in conjunction with Mountaintop, not with respect to the Debtor.

[4] Because this determination resolves all disputes regarding all transfers made within the lookback periods of §§ 547 or 548, a discussion of earmarking and insider status as raised by the Defendant is not necessary.

With regard to the initial transfer of $30,000, the Defendant seeks summary judgment on the grounds that the transfer made was not fraudulent as it was made for reasonably equivalent value and because there is no evidence showing an intent to hinder, delay, or defraud any of the Debtor's creditors.

The Trustee asserts that the transfers made to Defendant by the Debtor more than two years prior to the petition date were made with the actual intent to hinder, delay, or defraud the Debtor's creditors. The Trustee further asserts that all transfers made in that same period were made in respect to the Defendant's position as an insider for an antecedent debt at a time when the Debtor was insolvent, and when the Defendant had reasonable cause to believe that the Debtor was insolvent.

Neither § 547 or § 549 permit the avoidance of transfers occurring more than two years prior to the entry of an order for relief under § 301 (b). 11 U.S.C. §546(a). Rather, § 544 indirectly provides for a longer lookback period of time in that it permits avoidance by the trustee of transfers of property of the debtor that are voidable under state law. West Virginia Uniform Fraudulent Transfer Act (the "WVUFTA") operates similarly to the federal bankruptcy avoidance statutes as it allows a creditor to avoid a transfer or obligation made by a debtor under certain circumstances. *Sheehan v. Saoud*, 526 B.R. 166, 184 (N.D.W. Va. 2015). However, the WVUFTA provides a four-year lookback period, whereas § 547 provides up to one year, and § 548 provides two years. W. Va. Code, § 40-1A-9. Moreover, the WVUFTA allows for the avoidance of both fraudulently incurred obligations and fraudulent transfers. *Id*. As the WVUFTA covers fraudulently incurred obligations, in addition to fraudulent transfers, a trustee may seek to avoid an underlying obligation. Moreover, a settlement agreement cannot serve as presumptive evidence that reasonably equivalent value has been received. *In re Infinity Bus. Grp. Inc.,* 497 B.R. 495, FN 3 (Bankr. D.S.C. 2013). Thus, a trustee can avoid an obligation set forth in a settlement agreement if it is within the four-year lookback period, and the settlement satisfies the elements set forth in the WVUFTA.

Under the WVUFTA, there are two types of transfers that may be avoided. First, a transfer made with "actual intent to hinder, delay or defraud any creditor of the debtor" is avoidable. W. Va. Code 40-1A-4(a)(1). Alternatively, a debtor's transfer may be fraudulent if the debtor made the transfer

9

> without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
> (i)   Was engaged or was about to engage in business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii)  Intended to incur, or believed or reasonably should have believed that he (or she) would incur, debts beyond his (or her) ability to pay as they become due.

W. Va. Code § 40-1A-4(a)(2).

Moreover, the statute sets forth a non-exclusive list of eleven factors that may be considered to determine whether the debtor had the requisite intent to hinder, delay, or defraud any creditor. W. Va. Code § 40-1A-4(b). The factors include whether:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

W. Va. Code § 40-1A-4(b)(1-11).

The Defendant argues that summary judgment should be granted as the Trustee fails to demonstrate that the Debtor either (1) had actual intent to hinder, delay, or defraud any creditor or (2) incurred the obligation without receiving reasonably equivalent value in exchange therefor. The Trustee, however, points to various elements where material facts are in dispute regarding this determination. Particularly, the Trustee disputes whether the obligation incurred was for reasonably equivalent value, as the Defendant's claim against the Debtor in the civil action was allegedly worth far less than the Settlement Agreement amount. Interpreting the facts in the light most favorable to the Trustee, it is clear that there is a dispute as to whether reasonably equivalent

value was given. There is also a clear material dispute as to when the Debtor became insolvent. Based upon these considerations, the court cannot grant summary judgment for claims relating to W. Va. Code § 40-1A-4(a)(2).

Furthermore, the analysis under W. Va. Code § 40-A-4(a)(1), and the corresponding eleven factor test, requires a detailed factual analysis. *Nicholas Loan & Mortgage, Inc. v. W. Va. Coal Co-Op, Inc.*, 209 W. Va. 296, 302 (2001). The Defendant contends there is no material dispute as to whether the debtor retained possession or control of the property, whether the transfer was concealed, whether the debtor absconded, or whether the debtor concealed or removed assets, or whether the Defendant was an insider. Nonetheless, the Defendant's contentions put into dispute the remaining factors. Based on a material dispute regarding roughly half of the eleven factors listed in the statute, the court must deny summary judgment with regards to claims under W. Va. Code § 40-1A-4(a)(1) as well.

## IV.     CONCLUSION

Based upon the foregoing analysis, the Court will enter a separate order granting the Defendant summary judgment as to Counts II and III of the Trustee's complaint, and denying him summary judgment as to Count I of the Trustee's complaint regarding the initial transfer of $30,000.